**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| TRACY A. CUNNINGHAM REEVES, ) | No.  ED CV 07-1322-PLA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION AND ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 10, 2007, seeking review of the Commissioner's denial of her application for Supplemental Security Income.  The parties filed Consents to proceed before the undersigned Magistrate Judge on October 23, 2007, and November 19, 2007.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 20, 2008, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on April 21, 1964. [Administrative Record ("AR") at 50, 54, 58, 62.] She has a high school education and has completed at least three years of college.[1] [AR at 70, 91, 285-88.] Plaintiff has no past relevant work experience. [AR at 17, 301.]

On February 16, 2005, plaintiff protectively filed her application for Supplemental Security Income payments,[2] alleging that she has been disabled since January 1, 1989,[3] due to low blood sugar, bi-polar disorder, hypertension, diabetes, hot flashes, hallucinations, and anxiety disorder. [AR at 54-57, 58-62, 63-72, 81-84, 85-92.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 24-25, 32, 35-46.] A hearing was held on May 21, 2007, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 280-308.] A vocational expert, a medical expert, and plaintiff's husband also testified. [AR at 286-92, 295-98, 301-07.] On June 6, 2007, the ALJ determined that plaintiff was not disabled. [AR at 8-18.] Plaintiff requested review of the hearing decision. [AR at 7.] When the Appeals Council denied plaintiff's request for review on September 4, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 4-6.] This action followed.

---

[1] Although plaintiff in the disability reports indicated that she had completed four or more years of college, she testified at the May 21, 2007, hearing that she had completed three years of college. [Compare AR at 70, 91 with AR at 288.]

[2] While the record contains an application for Disability Insurance Benefits ("DIB"), it appears from the record as a whole that plaintiff is not eligible for DIB as she has not shown a recent connection to the work force or established "disability insured status." Instead, plaintiff seems to be seeking review of the denial of her application for Supplemental Security Income ("SSI") payments. Indeed, at the hearing on May 21, 2007, and in the decision dated June 6, 2007, the ALJ indicated that plaintiff filed an application for SSI. [AR at 282-83, 296.] Additionally, the initial disability determination, as well as the disability determination on reconsideration, both referenced plaintiff's claim for SSI payments. [AR at 24-25, 35, 42.] The analysis set forth herein, however, does not turn on whether the application is for SSI or DIB.

[3] At the hearing on May 21, 2007, the ALJ asked plaintiff's counsel if he would "be willing to adjust the onset date to the date of application of February 23rd of 2005." [AR at 290.] Plaintiff's counsel agreed to the proposed adjusted onset date of February 23, 2005. [Id.]

2

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability. [AR at 13.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: obesity, diabetes mellitus, and a schizoaffective disorder and psychotic disorder, not otherwise specified. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4]

---

[4]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

to perform a "narrowed range" of light work.[5]  Specifically, the ALJ concluded that plaintiff "can lift and/or carry 10 pounds frequently and 20 pounds occasionally.  Out of an 8-hour period, [plaintiff] can sit for 6 hours and stand and/or walk for 6 hours.  Nonexertional limitations include a sit/stand option every hour.  [Plaintiff] can occasionally climb stairs, bend, stoop, crouch, kneel, and crawl.  She cannot balance or climb ladders, ropes, or scaffolds.  She requires an air-conditioned work environment.  She must avoid working at heights or around dangerous, moving machinery.  Mentally, [plaintiff] can perform simple, repetitive tasks that do not involve safety operations or intense interpersonal contact and only limited contact with the general public." [AR at 13.]  At step four, the ALJ concluded that plaintiff had no past relevant work.  [AR at 17.]  At step five, the ALJ found, based on the vocational expert's testimony, that there are a significant number of jobs in the regional and national economies that plaintiff is capable of performing.  [AR at 17-18.] Accordingly, the ALJ determined that plaintiff is not disabled.  [AR at 18.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to: (1) properly consider the consultative psychiatric evaluator's findings; (2) properly consider the consultative psychological evaluator's findings; (3) pose a complete hypothetical question to the vocational expert; and (4) properly establish that plaintiff could perform other work in the local or national economy.  Joint Stipulation ("Joint Stip.") at 2-3.  As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine

---

[5] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b) and 416.967(b).

5

nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830. As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. See Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. See Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).

Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record. See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); Social Security Ruling[6] 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."[7] Lester, 81 F.3d at 830 (citations omitted). In making a disability

---

[6] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[7] An examining physician's opinion based on independent clinical findings that differ from the findings of a treating physician may constitute substantial evidence. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, (citation omitted) or (2) findings based on objective medical tests that the treating physician has not herself

6

determination, the ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician. See id. Further, the ALJ may only "reject the [contradicted] testimony of an examining, but non-treating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995) (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)); see Lester, 81 F.3d at 830-31 (the opinion of an examining physician is entitled to greater weight than that of a nonexamining physician, and can only be rejected for specific and legitimate reasons supported by substantial evidence in the record).

Finally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Lester, 81 F.3d at 831 (emphasis in original). The opinion of a non-examining physician may serve as substantial evidence when it is consistent with other independent evidence in the record. Id. at 830-31. "A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record." See Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984) (quoting Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir. 1984)).

Plaintiff argues that the ALJ failed to properly consider the consultative psychological evaluator's findings. Specifically, plaintiff asserts that the ALJ failed to indicate whether he accepted or rejected the findings of examining physician Dr. Robin Rhodes Campbell. Joint Stip. at 5-6. Defendant contends that the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting the opinion of Dr. Campbell in favor of the opinion of nonexamining medical expert Dr. William H. Soltz.[8] Joint Stip. at 6-8. As discussed below, the Court agrees with plaintiff.

---

considered." (citation omitted)).

[8] Dr. Soltz testified at the May 21, 2007, hearing.

7

On February 15, 2007, Dr. Campbell performed a complete psychological evaluation of plaintiff. [AR at 216-23.] Dr. Campbell diagnosed plaintiff with schizoaffective disorder, most recent episode, depressed, borderline intellectual functioning, and psychosocial stressors (unemployment). [AR at 222.] Dr. Campbell assessed plaintiff with a Global Assessment of Functioning ("GAF") score of 52.[9] In assessing plaintiff's impairments, Dr. Campbell found that plaintiff is moderately impaired in her ability to understand, remember, and carry out detailed instructions, as well as in her ability to interact appropriately with the public, supervisors, and co-workers. [AR at 222.] Dr. Campbell further found that plaintiff's ability to respond appropriately to work pressures in a usual work setting and respond to changes in a routine work setting is moderately-to-markedly impaired. [AR at 222.]

In the decision, the ALJ summarized Dr. Campbell's psychological consultative evaluation. In addition to Dr. Campbell's findings referenced above, the ALJ noted, among other things, that the "[t]est results indicated that the claimant was functioning intellectually in the borderline range," plaintiff's "memory functioning did not appear to be impaired, based on the WMS-III scores," "[h]er effort in general appeared to be good, but her effort was suboptimal," and plaintiff appeared "tired and distracted." [AR at 15.] The ALJ further noted that on a neurological screening test, plaintiff "scored as impaired in terms of motor and perceptual functioning and her approach to the tasks was careless and consistent with distractibility." [AR at 15.] The ALJ indicated that plaintiff "scored as malingering on one test of memory," however, the "[r]esults of the MMPI were valid and the claimant scored as anxious and depressed." [AR at 16.] The ALJ noted that plaintiff had fears that if she were placed in a stressful work environment, she would decompensate psychiatrically. [AR at 16.] After summarizing Dr. Campbell's findings, the ALJ considered Dr. Soltz's testimony

---

[9] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000). A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 34.

and found it "highly probative."[10] [AR at 16.] In accepting Dr. Soltz's opinion with respect to plaintiff's mental residual functional capacity, the ALJ indicated that "[i]t is consistent with the medical record, is based on objective medical evidence, takes account of the various recommendations, is even more restrictive than the recommendations of the psychiatric/psychological consultative examiners and State Agency review physicians, and accords [plaintiff] every reasonable benefit of the doubt." [AR at 16.]

Given that nonexamining medical expert Dr. Soltz disagreed with some of Dr. Campbell's findings, the ALJ was required to provide specific and legitimate reasons that are supported by substantial evidence for the rejection of Dr. Campbell's opinion in favor of the opinion of Dr. Soltz. Lester, 81 F.3d at 830-31 (the opinion of an examining physician, even if contradicted by the opinion of a nonexamining physician, can only be rejected for specific and legitimate reasons); see also Smith v. Massanari, 139 F.Supp.2d 1128, 1133 (C.D. Cal. 2001) (reliance on one physician's opinion in making a finding, which differs from that of another physician, is an implicit rejection of the latter); Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996) (ALJ erred in failing to explicitly reject an opinion and set forth specific, legitimate reasons for crediting another opinion). Although the ALJ indicated that he considered Dr. Soltz's testimony concerning plaintiff's limitations "highly probative" and agreed with the mental residual functional capacity assessed by Dr. Soltz [AR at 16], the ALJ's reliance on Dr. Soltz's testimony, without a proper rejection of the opinion of Dr. Campbell, is insufficient. Even assuming that the ALJ implicitly rejected the opinion of Dr. Campbell by accepting the opinion of Dr. Soltz, he did not provide legally sufficient reasons in the

---

[10] At the hearing on May 21, 2007, Dr. Soltz testified that plaintiff could handle moderately complex instructions, should not work around heights or dangerous equipment, or within armed security, and should not do any type of work that involves high density personal interaction or more than limited contact with the general public. [AR at 290-91.] Dr. Soltz noted "some idiosyncratic findings" in Dr. Campbell's psychological evaluation of plaintiff. [AR at 288-89.] Dr. Soltz found that there was no credibility to the IQ score of 65. [AR at 16, 289.] He testified that "[t]hree years of college for an IQ of 65 is impossible," and thus he was unable to validate that diagnosis. [Id.] Further, Dr. Soltz indicated that the test results of the Wechsler Memory Scale were inaccurate. [AR at 16, 289.] Although Dr. Soltz testified that plaintiff may suffer from "some learning disability," Dr. Soltz stated that he did not believe that there was evidence to suggest "borderline personal[ity], borderline intelligence, nor any indication of retardation." [Id.]

9

decision for such rejection.[11]  See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d).

The ALJ's assertion that Dr. Soltz's opinion concerning plaintiff's limitations "is even more restrictive than the recommendations of the psychiatric/psychological consultative examiners and State Agency review physicians" is not entirely accurate, and thus is inadequate to constitute a specific and legitimate reason for rejection of Dr. Campbell's opinion.  Notably, Dr. Campbell's psychological evaluation includes findings concerning plaintiff's ability to function in a work setting that were not discussed at all by Dr. Soltz at the hearing, or included in Dr. Soltz's assessment of plaintiff's limitations.  For instance, Dr. Campbell found that plaintiff was moderately impaired in her ability to "interact appropriately with the public, supervisors, and co-workers," "moderately-to-markedly" impaired in her ability to "respond appropriately to work pressures in a usual work setting and respond to changes in a routine work setting," and had a GAF score of 52.  [AR at 222.]  Dr. Soltz, on the other hand, found only that plaintiff should not do any type of work that involves high density personal interaction or more than limited contact with the general public, which is less restrictive than Dr. Campbell's findings.[12]

---

[11] Defendant contends that the ALJ "relied on substantial evidence in preferring Dr. Soltz's opinion." Joint Stip. at 7. Defendant further contends that Dr. Soltz's opinion was based on the medical record as a whole, including both of the consultative examiners' reports. Id. Despite Dr. Campbell's statement that she had reviewed all "available" records, defendant argues that "it did not appear that [s]he had in fact reviewed all of the mental health records, particularly the 2005 report of the consultative psychiatric examiner, Dr. Bedrin (AR at 152-156), whose findings the ALJ accepted . . .". Joint Stip. at 7-8. Whether or not Dr. Campbell reviewed all of the mental health records, the ALJ did not proffer that as a reason for rejecting the opinion of Dr. Campbell. As such, defendant's *post hoc* attempt to justify the ALJ's rejection of Dr. Campbell's opinion is not sufficient to cure the error. See Vista Hill Foundation, Inc. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985) (a reviewing court may affirm an administrative decision only on grounds articulated by the agency); Barbato v. Commissioner of Social Sec. Admin., 923 F. Supp. 1273, 1276 (C.D. Cal. 1996) (a court may remand if the decision of the ALJ as to a claimant's entitlement to benefits on its face does not adequately explain how a conclusion was reached, even if Social Security Administration can offer proper *post hoc* explanations for such unexplained conclusions).

[12] While the ALJ in the decision noted that Dr. Soltz's opinion "is consistent with the medical record" [AR at 16], the ALJ failed to describe how Dr. Campbell's opinion is inconsistent with the medical record.  As such, the ALJ's reliance on Dr. Soltz's opinion as consistent with the record is insufficient to constitute a specific and legitimate reason for rejection of Dr. Campbell's opinion.

Moreover, the ALJ's failure to include particular restrictions found by Dr. Campbell in his RFC assessment, or to properly reject those restrictions, undercuts his reliance on the testimony of Dr. Soltz, and thus his determination of plaintiff's RFC. The RFC assessment must be made "based on all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545, 416.945. Examples of the types of evidence required to be considered in making an RFC assessment include medical history, medical signs, laboratory findings, recorded observations, and medical source statements. See SSR 96-8p. The RFC assessment must always consider and address medical source opinions, and if the assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.[13] See id.; see also Thompson v. Barnhart, 2006 WL 709795, at *13 (E.D. Pa. March 15, 2006) ("'Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.'") (quoting Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981)). In determining plaintiff's mental residual functional capacity, the ALJ found that plaintiff could "perform simple, repetitive tasks that do not involve safety operations or intense interpersonal contact and only limited contact with the general public." [AR at 13.] No other mental limitations were included by the ALJ in plaintiff's RFC assessment. Given that the ALJ did not provide specific and legitimate reasons supported by substantial evidence in the record to reject the findings of Dr. Campbell in favor of Dr. Soltz, or include Dr. Campbell's findings in the RFC assessment, the ALJ's determination of plaintiff's RFC is deficient. As such, remand is warranted.[14]

---

[13] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

[14] As the ALJ's consideration on remand of Dr. Campbell's opinion may impact the other issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address those issues in this Order.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider the findings of Dr. Campbell. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: December 10, 2008

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE